5-3427                                        388 S. W. 2d 905

Opinion Delivered April 12, 1965.

*Mark E. Woolsey* and *Don Langston* for appellant.

*Edgar E. Bethell* and *William M. Stocks,* for appellee.

Carleton Harris, Chief Justice. Mr. and Mrs. W. C. Kesner, appellees herein, own Lot 37 in the Eastern Hills Addition to the City of Fort Smith. This lot lies at the northwest corner of the intersection of Grand Avenue and Sixtieth Terrace. Grand Avenue runs east and west, and borders the south side of the lot. Sixtieth Terrace runs north and south, and borders the east side of the lot. The Kesners' house on this corner lot faces east toward

Sixtieth Terrace, connected to that street by a sidewalk. On the south side of the house is located the garage and driveway, which enters upon Grand Avenue.

The Arkansas State Highway Commission, appellant herein, is constructing Interstate Highway No. 540. This highway runs north and south through the Eastern Hills Addition, somewhat parallel with Sixtieth Terrace, and east of it. The Kesner home faces the new highway. In constructing this highway, the commission has not taken any part of the Kesner lot; it has taken by eminent domain the lots across Sixtieth Terrace from the Kesner lot, and a part of Sixtieth Terrace, in the shape of a right triangle, has also been taken. The hypotenuse of the triangle is the right of way line; this line starts on the east side of the street, about fifty feet north of the Kesner lot, and runs southwesterly across the street until it reaches the southeast corner of the Kesner lot, this point being the location of the intersection of Grand Avenue and Sixtieth Terrace. Roughly along this right of way line, the commission has constructed a guard rail across Sixtieth Terrace. This rail is a barricade which closes off Sixtieth Terrace from Grand Avenue. On its side of the rail, the Highway Commission has lowered the grade of Sixtieth Terrace, and has constructed an access road from the new highway onto Grand Avenue.

The Kesners instituted suit in the Sebastian Chancery Court, asking that the commission be enjoined from taking or damaging their property without paying for it. The complaint alleges a loss of ingress and egress to and from the property, because of the barricade, and the taking of part of Sixtieth Terrace. It is further asserted that the free course of view, light and air will be impaired, and that the market value of their property will be diminished. The complaint was subsequently amended to allege further damage, because of the violation of certain restrictive covenants.

Appellant answered, denying that the Kesners' property had been taken or damaged, and further asserting that even if damage had occurred, it was non-compensable.

The cause was heard by the court under a stipulation that the only question to be decided was that of liability; the question of amount of damages (if the court found liability) was reserved.. After hearing the evidence, the court found that appellees had sustained damage by virtue of the fact that a right of ingress and egress had been lost; that damage had also been sustained by reason of restrictive covenants, and that the Kesners were entitled to just compensation for the diminution in value of their property. An injunction was granted against the commission, but was suspended, because that body had posted a $10,000 bond. From the finding of liability for damage done the Kesner property, appellant brings this appeal.

Appellees asked the court to require a $15,000 cash deposit in lieu of the $10,000 bond, but the court refused this prayer, and appellees have cross-appealed from the provision of the decree suspending the injunction, and the court's refusal to order the $15,000 cash deposit in lieu of the $10,000 bond.

In its opinion, the court mentioned that appellees were not entitled to recover for noise, dust, etc., and we approve and affirm this finding. *Campbell* v. *Ark. State Hwy. Commission*, 183 Ark. 780, 38 S.W. 2d 753.

We first dispose of the court's finding of damage suffered because of restrictive covenants contained in a Bill of Assurance filed in 1955, which provided, *inter alia*, that no lot in Eastern Hills should be used except for residential purposes; that nothing should be done which might . become an annoyance or nuisance to the neighborhood, and other restrictions which we do not set out because we find that these are not elements of damage for which appellees can be compensated. This same issue was raised in the case of *Arkansas State Highway Commission* v. *McNeill*, 238 Ark. 244, 381 S.W. 2d 425, and determined adversely to appellee's contention. The litigation presently before us was decided by the Chancellor before our opinion was rendered in *McNeill*, and appellees' brief on this point consists of a plea to reconsider our holding in that case. We decline to do so, feeling that that decision is entirely sound.

It follows that appellees are not entitled to compensation for this alleged damage, and the Chancellor's findings that this is a compensable element of damage is therefore reversed.

One of the main questions is whether the loss of ingress and egress to Sixtieth Terrace constitutes compensable damage. It might be first stated, as a general principle, that, before a landowner can recover for damage to his property where there has been no actual taking, he must suffer direct and substantial damage peculiar to himself, and not suffered by other members of the public, and this is true, even though he may be actually more inconvenienced that the public in general. *Arkansas State Highway Commission* v. *McNeill, supra.* It is not enough that a landowner show that his damage is *different* from that suffered by the general public. He must show that a property right has been invaded, and the fact that the value of his lot has diminished is not, within itself, sufficient to establish special compensatory damages. *Wenderoth* v. *Baker,* 238 Ark. 464, 382 S.W. 2d 578. Certain other conditions may arise, which might appear damaging to a complaining landowner, but which, under the law, are not compensable. We have held that circuity of travel, *i.e.,* being compelled to go a few blocks out of the way is not compensable. *Risser* v. *City of Little Rock,* 225 Ark. 318, 281 S.W. 2d 949. Here, appellees can enter onto Grand Avenue, travel to Fifty-ninth Terrace, turn to the right, and travel back to Sixtieth Terrace, and to their property.

Appellant says that appellees have not lost the right of ingress or egress to and from their property, because of this access to Grand Avenue. In fact, this is the entrance that has consistently been used by the Kesners since building their home. The garage is on the south side of the house, and the driveway enters onto Grand Avenue. There is not, and has never been, a driveway onto Sixtieth Terrace. Accordingly, it is vigorously argued by the Highway Commission that the right of ingress and egress has not been distributed in the slightest. However, we think the commission, in making this argument, overlooks a basic

right of an abutting property owner, for the right of access to a street or highway is one of the incidents of the ownership or occupancy of land abutting thereon. In Volume 25, Am. Jur., Section 154, Page 448, it is said:

"* * * Such right is appurtenant to the land, and exists when the fee title to the way is in the public as well as when it is in private ownership. It is a property right of which the owner cannot be deprived without just compensation. This easement extends to the full width of the street."[1]

The commission is correct in stating that as far as driving onto Grand Avenue from Sixtieth Terrace is concerned, appellees have not suffered any compensable damage by the state's erection of the barricade, because this is a damage common to the traveling public.

But there may be another reason why the loss of access to Sixtieth Terrace will have a particular effect upon appellees. From the time of construction their garage and driveway, appellees have backed out into Grand Avenue, and proceeded in either direction. However, a median has now been placed in the center of Grand Avenue, and, if the Kesners desire to go east on Grand Avenue, it is necessary that the car be backed entirely across the break in the median to the other side of the street. If desiring to travel west, appellees must back their car into the street to the right, or with the back of the vehicle toward the east. It is true that the last mentioned has always been necessary, but appellees contend that the situation has now changed, because of the contemplated flow of traffic, and the erection of the barricade.

The testimony reflects that, prior to the construction by the commission, there was no obstruction to one's vision, and accordingly a person could observe approaching traffic from the east as far as the eye could see; however,

---

[1] This section further states that this right is subordinate, however, to the public convenience, of which the public authorities having control of the streets are the judges, and is subject to such reasonable use of the street, not inconsistent with its maintenance as a public highway, as may be necessary for the public good and convenience and does not seriously impair it. The public authority may therefore impose reasonable regulations governing the exercise of such right."

with the change of grade, and the lowering of the access road onto Grand Avenue, it appears that, in backing out of their garage, appellees will only be able to observe approaching traffic (off the new highway) from the east for approximately 100 to 150 feet. Such a situation, of course, will be dangerous, and will likely require some sort of change in appellees' method of entering onto Grand Avenue.

Appellees argue that they have been specially damaged, since they can no longer extend their present driveway to Sixtieth Terrace (because of the guard rail and change in grade). It is true that this would have been the logical plan to have followed in order to avoid the traffic on Grand Avenue. Of course, it may be that appellees will be able to build a "turn around," and drive forward onto Grand Avenue. Actually, it appears from plaintiffs' exhibit No. 16 that appellees presently can back immediately to the east, when leaving the garage, and then proceed in a forward direction onto Grand, though this last cannot be definitely ascertained.

Be that as it may, we think the evidence reflects that appellees have suffered direct and substantial damage *peculiar to themselves; i.e.,* not suffered by other members of the public, and, what is of equal significance, not suffered by any other person whose property abuts Sixtieth Terrace. Owners of Lots 32, 33, 34, and 35[2] have full access to Sixtieth Terrace, but more than half of Sixtieth Terrace (now on east side of rail), abutting Lot 37,[3] has been *completely destroyed.*

In *Little Rock* and *Ft. Smith Ry. Co.* v. *Greer,* 77 Ark. 387, 96 S.W. 129, this court, citing an earlier case, said:

"The owner of premises abutting upon a street in a city or town may recover from a railroad company the damages resulting to his premises by the construction of its roadbed or other structures on its right of way along the street in such manner as to obstruct access to the prem-

---

[2]The cul de sac was not constructed.

[3]The owner of Lot 36 has not complained, though a small part (opposite this lot) of Sixtieth Terrace has been taken.

ises, though he have no interest in the fee of the street, and no part of his premises be taken and the road or other structure be skillfully built.''

In *Campbell* v. *Ark. State Highway Comm., supra,* we said:

''The right of eminent domain in the premises is conceded in the Arkansas Highway Commission, but it is insisted that this right is and must, under our Constitution, be subordinate to the right of the property owners to be first compensated for the damages to their property by the construction of the bridge and the approaches thereto. Their claim is based upon the guaranty given by § 22 of the Bill of Rights of our present Constitution, which provides that private property shall not be taken, appropriated, or damaged for public use, without just compensation therefor. It is claimed that under it, whether the property is taken or not, if it has been damaged by reason of the construction or operation of any improvements made for the use of the public, the owner may recover whatever damage the property has actually sustained. Under our decisions, the owner of property abutting upon a street or highway has an easement in such street or highway for the purpose of ingress and egress which attaches to his property and in which he has a right of property as fully as in the lot itself; and any subsequent act by which that easement is substantially impaired for the benefit of the public is a damage to the lot itself within the meaning of the constitutional provision for which the owner is entitled to compensation. The reason is that its easement in the street or highway is incident to the lot itself, and any damage, whether by destrucion or impairment, is a damage to the property owner and independent of any damage sustained by the public generally.''

The court, in this case, also stated that special damages can be suffered because of a change in grade.

We have reached the conclusion that the market value of appellees' property has been reduced by the destruction of Sixtieth Terrace, abutting their premises, and they are entitled to compensation therefor.

The order under review, as we have indicated, finds that the appellees are entitled to compensation, but it withholds a determination of the amount thereof until the question of liability has been decided by this court. Neither side has questioned the finality or appealability of this order, for it is evident that they both would like for the principal issue to be determined in advance. In fact, the parties recognize that the court's decree was not a final order, for they stipulated, at the outset of the trial, that, in event the court held for appellees, the order would be considered an appealable order to the Supreme Court. The want of a final order, however, is a matter that we ordinarily raise ourselves.

Under the statute we are limited to reviewing final judgments and decrees. Ark Stat. Ann. § 27-2101 (Repl. 1962).

"A judgment to be final must dismiss the parties from the court, discharge them from the action or conclude their rights to the subject-matter in controversy." *Piercy* v. *Baldwin* 205 Ark. 413, 168 S.W. 2d 1110."

An order, such as the one before us, which establishes the plaintiff's right to recover, but leaves for future determination the exact amount of his recovery, is not final. *Fitzgerald* v. *Phillips,* 41 Ark. 85; *Sennett* v. *Walker,* 92 Ark. 607, 123 S.W. 769; *Miners' Bank of Joplin* v. *Churchill,* 141 Ark. 211, 216 S.W. 695.

This appeal is therefore subject to dismissal. We realize, however, that we may have misled counsel for the Highway Commission by having inadvertently allowed such a piecemeal review in several similar cases (the point not having been raised), such as *Ark. State Highway Commission* v. *McNeill, supra.* Hence, we have considered this appeal upon its merits, but we take this opportunity to state that hereafter we shall revert to the better practice of reviewing only judgments and decrees that are final.

As to the cross-appeal, we find no merit, since we are of the opinion that appellees are adequately protected under the bond filed for any damage for which compensation is due.

In accordance with the views herein expressed, the decree is affirmed in part, and reversed in part, and the cause remanded for further proceedings, not inconsistent with this opinion.

Mr. Justice McFaddin concurs in part and dissents in part.

Ed. F. McFaddin, Associate Justice (concurring and dissenting). I agree thoroughly with that portion of the Majority Opinion which holds that the entire case should be fully developed on damages before we are asked to review any part of it. When the equity trial court finds that the plaintiff has *not* made a case on liability, then the complaint may be dismissed without offering the evidence as to damages. This is because of our statute on demurrer to the evidence (Ark. Stat. Ann. § 27-1729 [Repl. 1962]). But when, as here, the Trial Court has found that there is liability, the parties have no right to delay completion of the trial in order to get the Supreme Court to pass on that question before completing the evidence in the Trial Court as to damages. Piecemeal trial is to be avoided as much as possible; so I agree with that portion of the Majority Opinion regarding completion of the trial below, since the Highway Department is liable for some damages in this case.

My dissent goes to that part of the Majority Opinion which limits the elements of recoverable damage. My views on this angle of the case are contained in my dissent in *Ark. State Highway Comm. v. McNeill*, 238 Ark. 244, and there is no need for me to restate these views in this dissent. I again dissent in order to preserve such views as I stated in the McNeill case.