ARK. STATE HIGHWAY COMM. *v.* RHODES

5-3815                                    401 S. W. 2d 558

Opinion delivered April 4, 1966

[Rehearing denied May 9, 1966.]

*Mark E. Woolsey* and *Don Langston,* for appellant.

*Clark, Clark & Clark, Howell, Price & Worsham,* for appellee.

ED. F. McFADDIN, Justice. This is another eminent domain proceeding brought by the appellant, Arkansas State Highway Commission, to obtain right of way for Interstate 40 from Little Rock to Conway. The land here condemned was 86/100ths of an acre out of a four-acre tract owned by the appellees; but the land taken was through the center of the Gold Creek Landing on Lake Conway, where was situated a boat dock and accompanying facilities. The appellant valued the property taken and the accompanying damage at $19,000.00. The landowners claimed a much greater amount. Trial to a jury resulted in a verdict and judgment for the

landowners for $45,000.00; and appellant prosecutes this appeal, urging a number of points for reversal.

## I.

The appellees introduced a model about 4 feet by 6 feet in size, seeking to depict the location of the Gold Creek Landing on Lake Conway, the present highway, the landowners' facilities, and the effect of the proposed taking on the landowners' facilities. On the model the vertical items, such as trees, buildings, fences, and telephone poles, were not on the same scale as the horizontal items. The appellant unsuccessfully objected to the introduction of this model. We see no merit to this objection. The witness who prepared the model carefully explained the scale matters. There was nothing misleading. Besides, there were a number of enlarged aerial photographs introduced, and these, along with the model, were designed and apparently did give the jury a thorough understanding of the situation. Furthermore, at the conclusion of all the evidence the jury viewed the locality; so certainly the model did not mislead anyone.

## II.

The appellant has several points aimed at the testimony of the landowners' witness, Russell McLean, who testified that he was a real estate appraiser of 25 years experience, and that he had carefully examined and appraised the Gold Creek Landing of the appellees. He gave as his opinion that the fair market value of the property as of the date of the taking was $85,000.00; and that the value of the property after the taking was $12,000.00. In showing his familiarity with the property and its value the witness discussed the sale of another boat landing, known as Sport Haven, which had sold in 1954 for $60,000.00, and in 1958 for $85,000.00; and then the witness stated that the Sport Haven Landing property was not as valuable as the Gold Creek Landing property and so was of little benefit in aiding him in arriving at values. The appellant objected to the comparison with the Sport Haven property because of dissimilarity.

Then the witness McLean testified as to the previous sales of the Gold Creek Landing property. He showed that in 1959 Gold Creek Landing sold for $57,500.00; in 1960 for $75,000.00; and that Mr. Rhodes, the present owner, bought the property in 1960 for $82,000.00. The appellant conceded that previous sales of the same property would be admissible if the sales were recent in point of time; but contends that these sales were not proper to take into consideration because they were not for cash and in some instances another tract of property was conveyed as a part of the purchase price. Appellant cites us, *inter alia,* to the Ohio case of *Tenn. Gas Trans.* v. *Matteri,* 144 N. E. 2d 123; the federal case of *U. S.* v. *Leewell,* 286 F. 2d 398; and the Pennsylvania case of *Goodman* v. *Bethlehem,* 185 A. 719; each as holding that where property was purchased, not for cash, but was traded for other real estate, such sale is inadmissible because it would involve investigation into the value of the traded property.

For the reasons now stated, we are not impressed by appellant's argument. When a parcel of land is taken by eminent domain, the price which the owner paid for it when he recently acquired it is one of the important bits of evidence to determine the value of the property. *Ark. State Hwy. Comm.* v. *Snowden,* 233 Ark. 565, 345 S. W. 2d 917. The witness carefully explained to the jury that in the 1959 sale for $57,500.00, the purchase price had been $10,000.00 cash and a mortgage for $47,500.00. This certainly made the 1959 sale in all respects admissible. In each of the subsequent sales there was the assumption of the said mortgage and also the conveyance of other property. This was all explained by the witness; so if we start with the 1959 sale of $57,500.00 and deduct from that value the witness' testimony of the $12,500.00 as the present value of the property, we find the jury verdict was almost in accordance with this testimony. The witness McLean carefully explained to the jury that he had not examined the traded property, so the jury could not have been misled.

Furthermore, one of the witnesses called by the ap-

pellee was the witness Sawyer; and on cross examination appellant's counsel developed all the evidence regarding these sales of the Gold Creek Landing and Sports Haven Landing. When the appellant brought out such testimony on cross examination, any ruling regarding the McLean testimony was rendered harmless. Under the circumstances in this case, we see no harmful error to have been committed.

## III.

The appellant urges that the Trial Court refused to permit appellant's witness, Bryan McArthur, to testify as to sales of similar property in the area. This would give us most serious concern, except for the condition of the record. The witness, Bryan McArthur, called by the Highway Commission, testified that he had made a careful inspection of the Gold Creek Landing and that before the taking the property was worth $46,000.00, and after the taking the property was worth $27,500.00. He testified that in considering the value of the property he compared its value with the sale price of another landing, known as the Rogers Landing, which had been sold in 1958. The witness was asked any number of questions and made any number of answers regarding the similarity between the Rogers Landing property and the Gold Creek Landing property, and after several pages of testimony, this occurred:

"Q. In your opinion, are the properties sufficiently similar to give a basis for the valuation of Gold Creek Landing?

"A. It is similar to the point, like I say, to use to give a basic rule to go by.

"MR. WORSHAM: Again we are going to renew our objection. Because there are two houses; one might sell for $5,000.00 and another $100,000.00. The only similarity there is, that they are houses. Here, the only similarity is that they are boat docks.

"THE COURT: I think you are correct, Mr. Worsham. I don't believe I would pursue that any further. I don't think it's competent.

"BY MR. GILLESPIE:

"Q. Did you consider other land in the sale—other sales in the area?

"A. I considered Stanton to Holmes.

"Q. Did you consider sales of other lands?

"A. Yes, sir.

"Q. Did you consider all available sales of other lands?

"A. Yes, sir.

"Q. Did you consider all available sales of commercial locations on Lake Conway?

"A. Yes, sir.

"MR. GILLESPIE: That's all.

"MR. WORSHAM: No questions."

After the Court stated to the counsel for the appellant that he would suggest the matter not be pursued further, the counsel for the appellant apparently accepted the ruling of the Court and went on to other matters. The testimony that the witness McArthur had given was never excluded; and there was no offer as to any further testimony that the witness McArthur would give. Under these circumstances, and with the record in the condition it is, we cannot say that the appellant has properly preserved the point.

## IV.

One of the witnesses called by the landowners was Raymond E. Block, whom the appellant admitted was a qualified real estate appraiser. Mr. Block testified

that, in his opinion, before the taking the Gold Creek Landing was worth somewhere between $80,000.00 and $90,000.00; and that after the taking the property was worth only $15,000.00 or $20,000.00. Then the witness was taken by the appellant on cross examination and asked this question: "Now, has the accessibility of this property from Highway 65 been changed in any manner?" The witness then stated that, whereas the accessibility from Highway 65 had not been changed, still people going on Interstate 40 would have great difficulty in reaching the property, and that such difficulty tended to reduce the value of the landing. Because of this statement as to *accessibility,* the appellant moved that the testimony of the witness, Block, be stricken concerning the value of the property after the taking. The appellant says, accessibility is not a proper factor to use in valuation.

The appellant practically concedes that if we adhere to our holding in *Ark. State Hwy. Comm.* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201, then this point will be without merit. But the appellant spends a great portion of its reply brief insisting that we were wrong in our holding in *Ark. State Hwy. Comm.* v. *Russell;* and we are asked to overrule that case. We adhere to what we held in *Ark. State Hwy. Comm.* v. *Russell.* The point was carefully considered; and we have no intention of receding from that holding. Here, the appellant conceded that the witness was a qualified appraiser; and then, on cross examination, sought to develop some fact which might be used to exclude a portion of the testimony. The holding in *Ark. State Hwy. Comm.* v. *Russell* is a complete answer to the point now urged by the appellant, and we adhere to that holding.

## V.

The appellant urges other points which we need not discuss in detail. One of these is that the verdict is excessive. We have stated enough testimony of the witnesses to show that the verdict was not excessive. It is not a question of what the Highway witnesses believe

values to be, or what this Court might believe the values to be; it is a question of whether the verdict is within the range of the testimony; and it is.

Affirmed.